**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **DIA-DEN LTD.** | § | **CASE NO. 15-32626-H4-11** |
| | § | |
| **DEBTOR** | § | **CHAPTER 11** |
| | § | |
| | § | **Judge Bohm** |


**CHAPTER 11 PLAN OF REORGANIZATION**

The Debtor DIA-DEN LTD. (the "Debtor" or "Plan Proponent"), submits this Chapter 11 Plan of Reorganization (the "Plan") for the treatment of all outstanding creditor claims and equity interests pursuant to Chapter 11 of the Bankruptcy Code.  All holders of claims against and equity interests in the Debtor are encouraged to read the Plan and accompanying Disclosure Statement in their entirety before voting on the Plan.

**ARTICLE 1**
INTRODUCTION AND GENERAL PURPOSES OF THE PLAN

The Debtor owns a single tenant industrial complex located at 24310 State Highway 249, Tomball, Texas 77375.   The Plan provides for the restructuring of the existing debts such that payment to Creditors will be made by the Reorganized Debtor over time from cash on hand and operational cash flow as follows: (1)  Allowed Administrative Claims and Priority Non-Tax Claims will be paid in cash in full; (2) Allowed Ad Valorem Claims of Taxing Authorities will be paid in cash full without penalty or interest when they are due; (3) Allowed Non-Tax Priority Claims, if any, will be paid in cash in full within 30 days of the Effective Date; (4)  Allowed Secured Claim of the Debtor's lender will be paid by delivery of secured first lien promissory

note from the Reorganized Debtor for $8,197,380.19[1], with interest at the prime rate plus 1.5%; (5) Allowed Unsecured Claims will be paid in full without interest in six equal monthly installments, beginning on Effective Date or the date that such claims become Allowed Claims; and (6) the current equity holders will maintain their equity interest in the Reorganized Debtor.

## ARTICLE 2
## DEFINITIONS

2.1     For purposes of the Plan the following terms shall have the respective meanings specified as follows:

2.1.1     <u>Administrative Claim</u> shall mean any Claim that is defined in Section 503(b) of the Bankruptcy Code as being an "administrative expense" within the meaning of such section and referenced in Bankruptcy Code Section 507(a)(1) including, without limitation, the actual, necessary costs and expenses of preserving the Debtor's estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the case, compensation for legal and other services and reimbursement of expenses Allowed or awarded under Bankruptcy Code Sections 330(a) or 331, and all fees and charges assessed against the estate of the Debtor under title 28 of the United States Code.

2.1.2     <u>Allowed Claim or Allowed Interest</u> shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as Disputed Claims or contingent or liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy Rule 3001 or an order of the Bankruptcy Court, or this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending or as otherwise allowed under this Plan. An Allowed Claim may refer to a Secured Claim, a General Unsecured Claim, an Administrative Claim or a Priority Claim as the context provides.

---

[1] The exact claim amount will be determined at the Confirmation Hearing.

2.1.3    APS Lease shall mean that triple net lease entered into between the Debtor and Accelerated Production Systems, Inc. (as lessee) dated March 26, 2013 for the Industrial Facility.

2.1.4    Avoidance Actions shall mean those causes of action provided for under Sections 547 to 551 of the Bankruptcy Code, causes of action under applicable non-bankruptcy law for fraudulent transfer or similar legal theories.

2.1.5    Bankruptcy Code shall mean the Bankruptcy Code, 11 U.S.C. §101 *et seq.*, as it existed on the Filing Date.

2.1.6    Bankruptcy Court shall mean the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, in which the Debtor's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

2.1.7    Bankruptcy Estate shall mean all of the assets owned by the Debtor and its estate.

2.1.8    Bankruptcy Rules shall mean the rules of procedure in bankruptcy cases applicable to cases pending before the Bankruptcy Court and local bankruptcy rules as adopted by the Bankruptcy Court.

2.1.9    Bar Date shall mean _____, 2015, established by the Bankruptcy Court as the dates by which proofs of claim have to be filed.

2.1.10   Cash shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

2.1.11   Claim shall have the meaning given in Section 101 of the Bankruptcy Code, to wit, any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured whether or not asserted.

2.1.12   Class shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article 4.

2.1.13   Class 1 Claims, Class 2 Claims, Class 3 Claims,  and Class 4 Claims, shall mean the Claims so classified in Section 4.

2.1.14   Class 5 Interests shall mean the Allowed Interests so classified in Section 4.

2.1.15   <u>Confirmation Date</u> shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

2.1.16   <u>Confirmation Hearing</u> shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

2.1.17   <u>Confirmation Order</u> shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.1.18   <u>Creditor</u> shall mean any entity holding a Claim.

2.1.19   <u>Debtor</u> shall mean Dia-Den Ltd.

2.1.20   <u>Disbursing Agent</u> shall mean the Reorganized Debtor.

2.1.21   <u>Disclosure Statement</u> shall mean the written document filed by the Debtor in accordance with Section 1125(b) of the Bankruptcy Code containing information sufficient to enable a hypothetical reasonable investor typical of Holders of Claims or Interests of the relevant Class to make an informed judgment about this Plan.

2.1.22   <u>Disallowed Claim</u> shall mean any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

2.1.23   <u>Disputed Claim</u> shall mean that portion (including, where appropriate, the whole) of any Claim (other than an Allowed Claim) that (a) is listed in the Debtor's schedules of liabilities as disputed, contingent, or unliquidated; (b) is listed in the Debtor's schedules of liabilities and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim exceeds the scheduled amount; (c) is not listed in the Debtor's schedules of liabilities, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been filed and has not become an Allowed Claim.

2.1.24   <u>Effective Date</u> shall mean the date upon which the Confirmation Order becomes a Final Order.

2.1.25   <u>Equity Interest</u> shall mean the interests represented by an "equity security" as defined in Section 101 of the Bankruptcy Code.

2.1.26   <u>Executory Contract(s)</u> shall mean any Pre-petition Unexpired lease(s) or executory contract(s) of the Debtor within the meaning of Section 365 of the Bankruptcy Code.

2.1.27   <u>Filing Date</u> shall mean May 8, 2015, the date the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

2.1.28    <u>Final Order</u> shall mean an order or judgment of a Court which has become final in accordance with law, and which has not been stayed pending appeal.

2.1.29    <u>General Unsecured Claim</u> shall mean either (i) a Claim that is not secured by a lien, security interest or other charge against or interest in property in which Debtor has an interest or which is not subject to setoff under Section 553 of the Bankruptcy Code; (ii) a Claim that is not a Secured Claim; (iii) a Claim that is not an Administrative Claim; (iv) a Claim that is not a Priority Claim; or (v) a Claim that is not otherwise entitled to priority under Bankruptcy Code Sections 503 or 507.

2.1.30    <u>Holder</u> shall mean the owner or Holder of any Claim or Interest.

2.1.31    <u>Industrial Facility</u> shall mean the single tenant industrial facility with a total of 154,297 square feet of gross building area on 37.94 acres of land, including all site improvements, located at 24310 State Highway 249, Tomball, Harris County, Texas 77375.

2.1.32    <u>Interest</u> shall mean an Interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

2.1.33    <u>Insider</u> has the definition ascribed to it under the Bankruptcy Code.

2.1.34    <u>Lien</u> shall mean a "lien" as defined in Section 101(37) of the Bankruptcy Code.

2.1.35    <u>Non-Tax Priority Claims</u> shall mean any Claim that is defined in Section 507(a)(2)-(7) of the Bankruptcy Code.

2.1.36    <u>Person</u> shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

2.1.37    <u>Plan</u> shall mean this Chapter 11 Plan, as altered, modified or amended in accordance with the terms hereof in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

2.1.38    <u>Priority Tax Claims</u> shall mean any Claim that is defined in Section 507(a)(8) of the Bankruptcy Code.

2.1.39    <u>Professionals</u> shall mean all professionals employed in this case pursuant to Section 327 or 1103 of the Bankruptcy Code.

2.1.40   Pro-Rata shall mean the proportion that the Allowed amount of such Claim bears to the aggregate amount of Claims in each respective Class.

2.1.41   Reorganized Debtor shall mean Dia-Den Ltd., immediately after the Effective Date.

2.1.42   Secured Claim shall mean a Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the Holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

2.1.43   Substantial Consummation shall occur on the Effective Date.

2.1.44   Wells Fargo shall mean Wells Fargo Bank, National Association, the holder of the Amended and Restated Reimbursement Agreement dated August 6, 2007 and a Second Lien Note (as modified) originally dated April 29, 2010.

2.1.45   WF New Note shall have the meaning provided in section 4.2.2 of the Plan.

2.2   Interpretation.   Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective sections, articles of or exhibits to the Plan, as the same may be amended, waived or modified from time to time.   The headings and table of contents in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.   Words denoting the singular number shall include the plural number and vice versa and words denoting one gender shall include the other gender.   All exhibits and schedules attached to the Plan are incorporated herein by such attachment.

2.3   Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.   Words and terms defined in Section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan.   The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

**ARTICLE 3**
**ADMINISTRATIVE AND PRIORITY CLAIMS**

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Claims have not been classified and are treated and described in this section.   The Debtor is treated as a pass through entity for income tax purposes and, as such, is not subject to income taxes. The Debtor's federal tax status as a pass through entity is based upon its legal status as a partnership.   Accordingly, the Debtor has no federal income tax liability.

3.1 <u>Administrative Claims Bar Date</u>.   Any Holder of an Administrative Claim (including any cure Claims for executory contracts or leases that are assumed pursuant to this Plan, including Lease Claims) against the Debtor, except for administrative expenses incurred in the ordinary course of operating the Debtor's business, shall file an application for payment of such Administrative Claim on or within thirty (30) days after entry of the Confirmation Order with actual service upon counsel for the Debtor, otherwise such Holder's Administrative Claim will be forever barred and extinguished and such Holder shall, with respect to any such Administrative Claim, be entitled to no distribution and no further notices.  The Debtor shall pay pre-confirmation quarterly U.S. Trustee fees in full in Cash within thirty (30) days after the Effective Date.   U.S. Trustee fees which accrue after confirmation shall be paid by the Reorganized Debtor.

3.2 <u>Payment of Administrative Claims</u>.   Each Holder of an unpaid Allowed Administrative Claim shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Administrative Claim, unless the Holder of such Claim agrees to a different treatment.

3.3 <u>Payment of Non-Tax Priority Claims</u>.  Each Holder of an unpaid Allowed Non-Tax Priority Claim shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Non-Tax Priority Claim, unless the Holder of such Claim agrees to a different treatment.  No Non-Tax Priority Claims are expected.

**ARTICLE 4**
<u>CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS</u>

The Plan provides for the division of Claims and Interests into Classes.  Subject to all other applicable provisions of the Plan (including its distribution provisions), classified Claims and Interests shall receive the treatment set forth below.   The Plan will not provide any distributions on account of a Claim or Interest to the extent that such Claim or Interest has been disallowed, released, withdrawn, waived, settled, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third party guarantors, sureties, or insurers, whether governmental or nongovernmental.  The Plan will not provide any distributions on account of a Claim or Interest, the payment of which has been assumed by a third party.

**Claims and Interests**

4.1   Class 1.   <u>Allowed Secured Claim of Property Taxing Authorities</u>.

4.1.1   <u>Classification:</u>  Class 1 consists of the Allowed Secured Claims of Ad Valorem taxing authorities for the 2015 secured by a first lien on all of the Debtor's assets.

4.1.2   <u>Treatment:</u>   The APS Lease is a triple net lease and the tenant is responsible for payment of all property taxes on the Industrial Facility. The Allowed Secured Class 1 Claims shall be paid in cash in full without interest or penalty by the Debtor's tenant when they are due. The Allowed Secured Class 1 Claims Holders shall retain their liens

until such time as they are paid in full.  Harris County shall retain all liens it currently holds for the 2015 tax year on any property of the Debtor until it receives payment in full of all taxes.   The Class 1 claim will be timely paid without the necessity of the filing of administrative expense claims or requests for payment, and if not so timely paid, will be subject to state court collection procedures without the necessity of further recourse to the Bankruptcy Court.

4.1.3    <u>Impairment:</u>  The Class 1 Claims are unimpaired.

4.2    Class 2.    <u>Allowed Secured Claim of Wells Fargo.</u>

4.2.1    <u>Classification.</u>    Class 2 consists of the Allowed Secured Claim of Wells Fargo secured by a lien on substantially all of the Debtor's assets.   The sum of all amounts to be paid to Wells Fargo shall be referred to as the "Wells Fargo Allowed Claim."

4.2.2    <u>Treatment:</u>   The holder of the Class 2 Claim shall have an Allowed Secured Claim in the amount of $8,197,380.19[2] as of the Effective Date.

New Loan Documents: The Reorganized Debtor shall on the Effective Date execute a new Note to reflect the balance of Wells Fargo Allowed Claim (the "WF New Note").   The terms of the WF New Note shall provide that interest will accrue at prime rate, plus 1.5%, with equal monthly payments of principal and interest based upon a 30 year amortization.  The WF New Note will mature in five (5) years from the Effective Date.  The WF New Note will be secured by a first lien deed of trust on the Industrial Facility and related security agreements the forms of which shall be attached to the Plan Supplement filed no less than ten days before the Confirmation Hearing.   The monthly payments will be approximately $42,806. There will be no pre-payment penalty under the WF New Note.

The Debtor shall be obligated under the WF New Note to begin payments on the fifth day of the first month following the Effective Date.

4.2.3    <u>Impairment:</u>  The Class 2 Claim is impaired.

4.3    Class 3.    <u>Allowed Unsecured Claims.</u>

---

[2] The exact amount of the Wells Fargo Allowed Claim shall be established at the plan confirmation hearing and identified in the Order Confirming Plan.

4.3.1 <u>Classification:</u>  Class 3 consists of the Allowed Unsecured Claims of non-insiders.

4.3.2 <u>Treatment:</u> The Holders of Allowed Unsecured Class 3 Claims shall be paid in full without interest in equal monthly installments over six months from the Effective Date or the date such Claims become Allowed Claims.  Payments will begin on the Effective Date.

4.3.3 <u>Impairment:</u>  The Class 3 Claims are impaired.

4.4 Class 4.  <u>Allowed Interests of Equity Holders</u>.

4.4.1 <u>Classification:</u>  Class 4 consists of the Allowed Equity Interests in the Debtor.

4.4.2 <u>Treatment:</u>  Holders of Equity Interests shall retain their interests in the Reorganized Debtor but shall receive no distributions until a new lease is entered into for the Industrial Facility at the then market rates (but in no event less than $65,000 per month, triple net).

4.4.3 <u>Impairment:</u>  Class 4 is impaired under the Plan.


**ARTICLE 5**
**VOTING OF CLAIMS AND INTERESTS**

5.1 Classes 2 and 3 are impaired and therefore are entitled to vote on this Plan.  Class 1 is unimpaired and not entitled to vote.  Accordingly, the acceptances of Class 2 and 3 Claims must be solicited.

5.2 The Class 4 Equity Interest Holders are impaired and therefore are also entitled to vote.


**ARTICLE 6**
**MEANS FOR EXECUTION OF PLAN**

6.1 <u>Vesting of Property of the Estate in Reorganized Debtor</u>. On the Effective Date of the Plan, all property of the Debtor and of the Estate shall vest in the Reorganized Debtor free and clear of liens, claims and encumbrances, except as otherwise provided in the provisions of this Plan.  To be clear, Wells Fargo is retaining its liens on substantially all of the Debtor's assets.

6.2 <u>Continuation of Business Operations</u>**.**  From and after the Effective Date of the Plan, the Reorganized Debtor is authorized to continue its normal business operations and enter into such transactions as it deems advisable, free of any restriction or limitation imposed under

any provision of the Bankruptcy Code, except to the extent otherwise provided in the Plan.  The cash flow of the operations shall be used to fund payments required by the Plan.  The Financial Projections for the Reorganized Debtor are attached as Exhibit C to the Disclosure Statement.

6.3     <u>Directors and Officers of Reorganized Debtor</u>.  Dennis W. Abrahams will continue to serve as the President of PJJ Inc., the Debtor's general partner, from and after the Effective Date of the Plan.  Except for reimbursement of actual expenses, Mr. Abrahams will not receive any distributions/payments from the Debtor until a new lease is entered into for the Industrial Facility at the then market rate (but in no event less than $65,000 a month, triple net).

6.4     <u>Source of funds for Payments due on the Effective Date</u>.  Cash on hand and collection of rents from the APS Lease will be used to pay Administrative and other Claims as required by the Plan.

6.5     <u>Restated Agreement of Limited Partnership</u>.  At the Debtor's option, the Debtor's limited partnership agreement and Articles of incorporation may be modified to prohibit the issuance of non-voting equity security to the extent required by Code § 1123(a)(6) and such other modifications as may be approved in the Confirmation Order.

6.6     <u>Disbursing Agent</u>.  The Reorganized Debtor shall act as the Disbursing Agent.  If the Reorganized Debtor chooses not to act as the Disbursing Agent, then it shall designate a substitute.

6.7     <u>Exclusive Rights and Duties of the Disbursing Agent</u>.  The duties of the Disbursing Agent shall be as follows:

6.7.1     <u>Distribution to Creditors with Administrative Claims</u>.  In accordance with Article 3 the Disbursing Agent shall pay the Administrative and Priority Claims first out of Cash on hand generated from operations.

6.7.2     <u>Distributions to Creditors with Allowed Claims</u>.  The Disbursing Agent shall have the sole right and duty to make the distributions provided for hereunder as set forth in Article 4.

6.8     <u>Powers of the Disbursing Agent</u>.  The Disbursing Agent shall have full power and authority to do the following.

6.8.1     The Disbursing Agent shall be authorized to make disbursements to Administrative and Priority Creditors in accordance with Article 3 and other Creditors in accordance with Article 4.

6.8.2     The Disbursing Agent shall be authorized to file all reports required under law, including state and federal tax returns, and to pay all taxes incurred by the Bankruptcy Estate.

6.8.3     The Disbursing Agent shall be authorized to take any and all actions, including the filing or defense of any civil actions or Claim objections necessary to accomplish the above.

6.8.4    The Disbursing Agent shall be authorized to employ and pay reasonable fees and expenses of such attorneys, accountants, and other professionals, as may be deemed necessary to accomplish the above and shall be entitled to reserve sufficient Cash to pay the projected fees and costs to such Professionals on a post-confirmation basis, and shall be authorized to purchase insurance with such coverage and limits as are reasonably necessary, including covering liabilities incurred in connection with its service as Disbursing Agent.

6.8.5    The Disbursing Agent may suspend distribution to any Creditor that has not provided the Disbursing Agent with its Federal Tax Identification number or social security number, as the case may be.

6.9    Presumption of Disbursing Agent's Authority.  In no case shall any party dealing with the Disbursing Agent in any manner whatsoever be obligated to see that the terms of its engagement have been complied with, or be obligated or privileged to inquire into the necessity or expediency of any act of the Disbursing Agent, or to inquire into any other limitation or restriction of the power and authority of the Disbursing Agent, but as to any party dealing with the Disbursing Agent in any manner whatsoever in relation to the assets, the power of the Disbursing Agent to act or otherwise deal with said property shall be absolute except as provided under the terms of the Plan.

6.10    Limitation on Disbursing Agent's Liability.

6.10.1    Except gross negligence or willful misconduct, no recourse shall ever be had directly or indirectly against the Disbursing Agent personally or against any employee of the Disbursing Agent by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Disbursing Agent pursuant to this Plan, or by reason of the creation of any indebtedness by the Disbursing Agent for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants and agreements of the Disbursing Agent or any such employee, whether in writing or otherwise shall be enforceable only against and be satisfied only out of the assets of the Bankruptcy Estate and every undertaking, contract, covenant or agreement entered into in writing by the Disbursing Agent shall provide expressly against the personal liability of the Disbursing Agent.

6.10.2    The Disbursing Agent shall not be liable for any act the Disbursing Agent may do or omit to do as Disbursing Agent hereunder while acting in good faith and in the exercise of the best judgment of the Disbursing Agent and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Disbursing Agent, shall be evidence of such good faith and best judgment; nor shall the Disbursing Agent be liable in any event except

for gross negligence or willful default or misconduct of the Disbursing Agent.

6.11    Establishment and Maintenance of Disputed Claims Reserve:

6.11.1    Distributions made in respect of any Disputed Claims shall not be distributed, but shall instead be deposited by the Disbursing Agent into an interest-bearing account styled "Disputed Claims Reserve". The funds in this account shall be held in trust for the benefit of the Holders of all Disputed Claims.

6.11.2    Unless and until the Bankruptcy Court shall determine that a good and sufficient reserve for any Disputed Claim is less than the full amount thereof, the calculations required by the Plan to determine the amount of the distributions due to the Holders of Allowed Claims and to be reserved for Disputed Claims shall be made as if all Disputed Claims were Allowed Claims in the full amount claimed by the Holders thereof. No payment or distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

6.11.3    At such time as a Disputed Claim becomes an Allowed Claim the distributions due on account of such Allowed Claim and accumulated by the Debtor (including the Pro Rata share of any dividends or interest earned in respect of such distributions) shall be released from the account and paid by the Debtor to the Holder of such Allowed Claim.

6.11.4    At such time as any Disputed Claim is finally determined not to be an Allowed Claim, the amount on reserve in respect thereof shall be released from the account and returned to Debtor.

6.11.5    The Disbursing Agent shall not be required to withhold funds or consideration, designate reserves, or make other provisions for the payment of any Claims that have been Disallowed by a Final Order of the Bankruptcy Court as of any applicable time for distribution under the Plan, unless the Bankruptcy Court orders otherwise or unless the Court's order of disallowance has been stayed.

6.12    Delivery of Distributions.  Subject to Bankruptcy Rule 9010 and the provisions of the Plan, distributions to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such a Holder if no proof of Claim or proof of Equity Interest is filed or if the Disbursing Agent has been notified in writing of a change of address), except as provided below.  If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Disbursing Agent is notified of such Holder's then current address, at which time all missed distributions shall be made to such Holder without interest.  Amounts in

respect of undeliverable distributions shall be returned to the Disbursing Agent until such distributions are claimed.

6.13    Time Bar for Cash Payments.  Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the Allowed Claim with respect to which such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before the later of (a) the first anniversary of the Effective Date or (b) ninety (90) days after the date of reissuance of such check.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

6.14    Unclaimed Property.  If any Person entitled to receive distributions under the Plan cannot be located within a reasonable period of time after the Effective Date, the distributions such Person would be entitled to receive shall be held by the Disbursing Agent in a segregated interest-bearing account.  If the Person entitled to any such distributions is located within six months after the Effective Date, such distributions, together with any dividends and interest earned thereon, shall be paid and distributed to such Person.  If such Person cannot be located within such period, such distributions and any dividends and interest thereof shall be returned to the respective Debtor and such Person shall have waived and forfeited his right to such distributions.  Nothing contained in this Plan shall require the Debtor or the Disbursing Agent to attempt to locate such Person.  It is the obligation of each Person claiming rights under the Plan to keep the Debtor and/or the Disbursing Agent advised of current address by sending written notice of any changes to the Debtor and/or the Disbursing Agent.

6.15    Fractional Dollars.  Any other provision of the Plan notwithstanding, no payments of fractional dollars will be made to any Holder of an Allowed Claim.  Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest whole dollar (up or down).

6.16    Minimum Payment.  The minimum amount of any distribution shall be $25.  If a payment is due in an amount less than $25, then such payments is hereby waived and the funds shall be retained by the Reorganized Debtor.

6.17    Distribution Dates.  Whenever any distribution to be made under the Plan is due on a day other than a Business Day, such distribution will instead be made, without penalty or interest, on the next Business Day.  The Bankruptcy Court shall retain power, after the Confirmation Date, to extend distribution dates for cause, upon motion and after notice and a hearing (as defined in Bankruptcy Code Section 102) to affected parties.

6.18    Orders Respecting Claims Distribution.  After confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction to enter orders in aid of consummation of the Plan respecting distributions under the Plan and to resolve any disputes concerning distributions under the Plan.

6.19    Avoidance Actions.  The Reorganized Debtor retains any Avoidance Actions and is authorized, but not required, to prosecute them after the Confirmation Date.  The Net Proceeds of Avoidance Actions will be distributed to Holders of Allowed Class 4 Claims (as set forth above), but compromises of Avoidance Actions may also benefit the Reorganized Debtor or Debtor or Holders of Claims of other Classes.  The Debtor does not anticipate filing any Avoidance Actions.

6.20    Agreements, Instruments and Documents.  All agreements, instruments and documents required under the Plan to be executed or implemented, together with such others as may be necessary, useful, or appropriate in order to effectuate the Plan shall be executed on or before the Effective Date or as soon thereafter as is practicable.

6.21    Further Authorization.  The Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings from the Bankruptcy Court, in addition to those specifically listed in the Plan, as may be necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan.  The Bankruptcy Court shall retain jurisdiction to enter such orders, judgments, injunctions and rulings.

## ARTICLE 7
## CRAMDOWN AND CLAIMS ALLOWANCE

7.1    In the event any Class rejects the Plan, the Debtor will seek to invoke the provisions of Section 1129(b) of the Bankruptcy Code and confirm the Plan notwithstanding the rejection of the Plan by any Class of Claims or Interests.

**IN THE EVENT ANY CLASS REJECTS THE PLAN THE DEBTOR WILL SEEK TO INVOKE THE PROVISIONS OF 11 U.S.C. §1129(b) AND CONFIRM THE PLAN OVER THE REJECTION OF THE CLASS OR CLASSES.  THE TREATMENT AFFORDED EACH CREDITOR IN EACH CLASS IN THE EVENT OF A CRAMDOWN WILL BE THE SAME AS THAT PROVIDED FOR IN THE PLAN AS THE CASE MAY BE.**

7.2    Allowance of Claims under the Plan.  Allowance is a procedure whereby the Bankruptcy Court determines the amount and enforceability of Claims against the Debtor, if the parties cannot agree upon such allowance.  It is expected that the Debtor and/or the Disbursing Agent will file objections to Claims of Creditors, if any are deemed necessary, before and after confirmation of the Plan.  The Plan merely provides for payment of Allowed Claims, but does not attempt to pre-approve the allowance of any Claims.

7.3    Objection Deadline.  As soon as practicable, but in no event later than one hundred eighty (180) days after the Effective Date, unless extended by order of the Bankruptcy Court for cause, objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made.

7.4    Prosecution of Objections.  On and after the Effective Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement or withdrawal of all objections to Claim may be made by the Debtor and/or Disbursing Agents.

## ARTICLE 8
## DEFAULT

8.1    If any of the following events occur, the Debtor will be in breach of this Plan ("Default"):

      8.1.1    Failure to pay any amount due under the Plan when due; or

      8.1.2    Breach or violation of a material covenant or uncured default under the Plan, including failure to pay amounts due.

8.2    Should the Debtor be in breach or violation under the foregoing paragraph, or Default has occurred and thereafter the Debtor fails to remedy or resolve such breach within thirty (30) days from the date of receipt of written notice of such breach, violation or default, then any Creditor owed a distribution, which the Debtor fails to make when due, at its option, may declare that the Debtor is in default of this Plan.

## ARTICLE 9
## EXECUTORY CONTRACTS AND LEASES

9.1    The Debtor hereby assumes the executory contracts and leases set forth in Exhibit A.

9.2    The Debtor hereby rejects all executory contracts and leases listed as "reject" in Exhibit A.

9.3    Any Claims arising from rejection of an executory contract or lease must be filed on or before 20 days from the Effective Date.  Otherwise, such Claims are forever barred and will not be entitled to share in any distribution under the Plan.  Any Claims arising from rejection, if timely filed and allowed, will be paid as General Unsecured Claims.

9.4    The Debtor does not believe there are any cure amounts due on any lease being assumed by the Debtor.  To the extent there are cure amounts owed and an Administrative Claim is filed, such claims shall be paid when and if allowed by Final Order of the Bankruptcy Court.

## ARTICLE 10
## MODIFICATION OF THE PLAN

10.1    The Debtor may propose amendments and modifications of this Plan through the Confirmation Date with leave of the Bankruptcy Court upon appropriate notice.  After the Confirmation Date, the Reorganized Debtor may, with approval of the Bankruptcy Court, so long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the intent of this Plan.  After the Confirmation Date, the Debtor may, with approval of the Bankruptcy Court, modify the Plan as to any Class, even though such modification materially affects the rights of the Creditors or Interest Holders in such

Class; provided, however, that such modifications must be accepted as to Classes of Creditors by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Claims voting in each such Class and fifty-one percent (51%) in number of Allowed Claims voting in such Class, and as to Classes of Interest Holders by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Interests voting in each such Class; and provided, further, that additional disclosure material needed to support such modification shall be approved by the Bankruptcy Court in the manner consistent with Section 1125 of the Bankruptcy Code and Rule 3017 of the Federal Rules of Bankruptcy Procedure.  With respect to all proposed modifications to the Plan both before and after confirmation, the Debtor shall comply with the requirements of Section 1127 of the Bankruptcy Code.

## ARTICLE 11
## CONDITIONS PRECEDENT

11.1    Conditions to Confirmation.  Confirmation of the Plan shall not occur and the Bankruptcy Court shall not enter the Confirmation Order unless all of the requirements of the Bankruptcy Code for confirmation of the Plan with respect to the Debtor shall have been satisfied.  In addition, confirmation shall not occur, the Plan shall be null and void and of no force and effect, and the Plan shall be deemed withdrawn unless the Court shall have entered all orders (which may be orders included within the Confirmation Order) required to implement the Plan.

11.2    Waiver and Nonfulfillment of Conditions to Confirmation.  Nonfulfillment of any condition to confirmation of the Plan may be waived only by the Debtor.  In the event the Debtor determines that the conditions to the Plan's confirmation which they may waive cannot be satisfied and should not, in their discretion, be waived, the Debtor may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

11.3    Confirmation Order Provisions for Pre-Effective Date Actions.  The Confirmation Order shall empower and authorize the Debtor to take or cause to be taken, prior to the Effective Date, all actions which are necessary to enable it to implement the provisions of the Plan and satisfy all other conditions precedent to the effectiveness of the Plan.

11.4    Conditions to the Effective Date.  The following are conditions precedent to the effectiveness of the Plan:  (i) the Plan is confirmed and the Bankruptcy Court shall have entered the Confirmation Order, which shall have become a Final Order; (ii) Debtor does not withdraw the Plan at any time prior to the Effective Date; and (iii) the Reorganized Debtor shall have sufficient Cash on hand to make the initial payments and distributions required under the Plan.

11.5    Waiver and Nonfulfillment of Conditions to Effective Date.  Nonfulfillment of any condition set forth in the immediately foregoing paragraph of the Plan may be waived only by the Plan Proponents.  In the event that the Plan Proponents  determine that the conditions to the Plan's Effective Date set forth in the immediately foregoing paragraph of this Plan cannot be satisfied and should not, in their sole discretion, be waived, the Plan Proponents  may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

## ARTICLE 12
<u>JURISDICTION OF THE BANKRUPTCY COURT</u>

12.1    Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Bankruptcy Court shall retain exclusive jurisdiction of this case after the Confirmation Date with respect to the following matters:

12.1.1    To allow, disallow, reconsider (subject to Bankruptcy Code Section 502(j) and the applicable Bankruptcy Rules) Claims and to hear and determine any controversies pertaining thereto;

12.1.2    To estimate, liquidate, classify or determine any Claim against the Debtor, including claims for compensation or reimbursement;

12.1.3    To resolve controversies and disputes regarding the interpretation and implementation of the Plan, including entering orders to aid, interpret or enforce the Plan and to protect the Debtor and any other entity having rights under the Plan as may be necessary to implement the Plan;

12.1.4    To hear and determine any and all applications, contested matters, or adversary proceedings arising out of or related to this Plan or this case or as otherwise might be maintainable under the applicable jurisdictional scheme of the Bankruptcy Code prior to or after confirmation and consummation of the Plan whether or not pending on the Confirmation Date;

12.1.5    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

12.1.6    To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

12.1.7    To adjudicate all Claims to any lien on any of the Debtor's assets;

12.1.8    To hear and determine matters concerning state, local and federal taxes pursuant to the Bankruptcy Code, including (but not limited to) sections 346, 505 and 1146 thereof and to enter any order pursuant to Bankruptcy Code Section 505 or otherwise to determine any tax of the Debtor, whether before or after confirmation, including to determine any and all tax effects of the Plan;

12.1.9    To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan or to modify the Plan as provided by applicable law;

12.1.10    To determine all questions and disputes regarding title to assets and shares of the Debtor, Reorganized Debtor or of the Bankruptcy Estate, as may be necessary to implement the Plan;

12.1.11    To enforce and to determine actions and disputes concerning the releases contemplated by the Plan and to require persons holding Claims being released to release Claims in compliance with the Plan;

12.1.12    To fix the value of collateral in connection with determining Claims;

12.1.13    To enter a final decree closing the case and making such final administrative provisions for the case as may be necessary or appropriate.

12.1.14    To, (even after entry of a final decree), hear any cases enforcing Bankruptcy Code section 525.

12.2    <u>Failure of the Bankruptcy Court to Exercise Jurisdiction</u>.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under or related to the Chapter 11 case, including the matters set forth in Section 12.1 of the Plan, this Article 12 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE 13
## EFFECT OF CONFIRMATION

13.1    <u>Binding Effect</u>.  As provided for in Section 1141(d) of the Bankruptcy Code, the provisions of the Plan shall bind the Debtor, any entity acquiring property under the Plan and any Creditor, Equity Holder of the Debtor, whether or not the Claim or Interest of such Creditor or Equity Holder is impaired under the Plan and whether or not such Creditor or Equity Holder has accepted the Plan, and the United States and any licensing authority.  After confirmation, the property dealt with by the Plan shall be free and clear of all Claims and Interests of Creditors and Equity Holders, except to the extent as provided for in the Plan as the case may be.  The Confirmation Order shall contain an appropriate provision to effectuate the terms of this paragraph 13.1.

13.2    <u>Satisfaction of Claims and Interests</u>.  Holders of Claims and Interests shall receive the distributions provided for in this Plan, if any, in full settlement and satisfaction of all such Claims, and any interest accrued thereon, and all such Interests.

13.3    <u>Vesting of Property</u>.  Except as otherwise expressly provided in the Plan or the Confirmation Order, pursuant to Section 1141(b) of the Bankruptcy Code, upon the Effective Date, all Property of the Bankruptcy Estate shall vest in the Debtor free and clear of all Claims, liens, encumbrances, charges or other Interests of Creditors and Interest Holders.  Except as otherwise expressly provided in the Plan or the Confirmation Order, all assets of the Bankruptcy Estate shall vest in the Reorganized Debtor free and clear of all Claims, liens, and encumbrances. Moreover, all licenses and permits held by the Debtor shall be held by the Reorganized Debtor.

All licenses or permits held by the Debtor or the Bankruptcy Estate will be retained by the Reorganized Debtor.

13.4    <u>Discharge</u>.   Pursuant to Section 1141(d) of the Bankruptcy Code, upon the Effective Date, the Debtor shall be discharged from any debt that arose before the date of such confirmation, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of the Claim based on such debt is filed or deemed filed under Section 501 of this title; such Claim is allowed under Section 502 of this title; or the Holder of such Claim has accepted the Plan.

13.5    **<u>Injunction</u>.  The Confirmation Order shall include a permanent injunction prohibiting the collection of Claims in any manner other than as provided for in the Plan. All Holders of Claims shall be prohibited from asserting against the Debtor, Reorganized Debtor, or *Insider Released Party* (defined *infra*) or any of their assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such Holder filed a proof of Claim.  Such prohibition shall apply whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of a Claim based upon such debt has accepted the Plan. This injunction also permits the Reorganized Debtor to enforce 11 U.S.C. §525(a) upon improper revocation or restriction of licenses.  The injunction shall extend up through August 2020.**

13.6    <u>Preservation of Setoff Rights</u>.   In the event that the Debtor has a Claim of any nature whatsoever against the Holders of Claims, the Debtor may, but is not required to setoff against the Claim (and any payments or other distributions to be made in respect of such Claim hereunder), subject to the provisions of Section 553 of the Bankruptcy Code.  Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor of any Claim that the Debtors has against the Holder of Claims.  Neither this provision nor the injunctive provision of the Confirmation Order shall impair the existence of any right of setoff or recoupment that may be held by a Creditor herein; provided that the exercise of such right shall not be permitted unless the Creditor provides the Debtor with written notice of the intent to affect such setoff or recoupment.  If the Debtor or the Disbursing Agent, as applicable, objects in writing within twenty (20) business days following the receipt of such notice, such exercise shall only be allowed upon order of the Bankruptcy Court.  In the absence of timely objection, the Creditor may implement the proposed setoff or recoupment against the Claim held by the Bankruptcy Estate.

13.7    **<u>Releases</u>.  On the Effective Date and pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code, the Debtor, and to the maximum extent provided by law, its agents, release and forever discharge all claims, including acts taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into or any other act taken or entitled to be taken in connection with the Plan or this case against the following, whether known or unknown:**

13.7.1 **Dennis W. Abrahams ("Insider Released Party"), in connection with any and all claims and causes of action arising on or before the Confirmation Date that may be asserted by or on behalf of the Debtor or the Bankruptcy Estate and/or on account of the Debtor's Case.**

13.7.2 **The release of these Insider Released Party shall be conditioned upon the occurrence of the Effective Date.**

13.7.3 **The Debtor's Professionals will be released from any and all claims and liabilities other than willful misconduct or if the release is otherwise restricted by the Texas Disciplinary Rules of Professional Conduct.**

13.8 <u>Guarantors</u>.  There are no known guarantors of any of the Debtor's liabilities.

13.9 <u>Lawsuits</u>.  On the Effective Date, all lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of Claims against the Debtor and any Guarantor except proof of Claim and/or objections thereto pending in the Bankruptcy Court shall be dismissed as to the Debtor.  Such dismissal shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by the Plan.  All parties to any such action shall be enjoined by the Bankruptcy Court by the Confirmation Order from taking any action to impede the immediate and unconditional dismissal of such actions.  All lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of a claim(s) by the Debtor or any entity proceeding in the name of or for the benefit of the Debtor against a person shall remain in place only with respect to the claim(s) asserted by the Debtor or such other entity, and shall become property of the Post-Confirmation Reorganized Debtor to prosecute, settle or dismiss as it sees fit.

13.10 <u>Insurance</u>.  Confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtor or Reorganized Debtor in which the Debtor or any of the Debtor's representatives or agents is or was the insured party; the Reorganized Debtor shall become the insured party under any such policies without the need of further documentation other than the Plan and entry of the Confirmation Order.  Each insurance company is prohibited from denying, refusing, altering or delaying coverage on any basis regarding or related to the Debtor's bankruptcy, the Plan or any provision within the Plan.

13.11 <u>U.S. Trustee Fees</u>.  The Debtor shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismisses the case.  After confirmation, the Reorganized Debtor shall file with the Bankruptcy Court and shall transmit to the United States Trustee a true and correct statement of all disbursements made by the Debtor for each month or portion thereof that this Chapter 11 case remains open in a format prescribed by the United States Trustee.

13.12   <u>Term of Stays</u>.  Except as otherwise provided in the Plan, the stay provided for in this case pursuant to Bankruptcy Code Section 362 shall remain in full force and effect until the Effective Date.

**ARTICLE 14**
<u>MISCELLANEOUS PROVISIONS</u>

14.1   <u>Corporate Authority</u>.  All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan without the need of further board or general partner resolutions, approval, notice or meetings, other than the notice provided by serving this Plan on all known Creditors of the Debtor, all Interest Holders, and all current directors of the Debtor.

14.2   <u>Documentation</u>.  The Debtor, all Creditors and other parties in interest required to execute releases, termination statements, deeds, bills of sale or other documents required by the Plan, shall be ordered and directed to execute such documents as are necessary in order to effectuate the terms of this Plan.  The Bankruptcy Court may determine that the failure of any party to execute a required document shall constitute contempt of the Bankruptcy Court's Confirmation Order, which shall require such documents to be executed in accordance with the terms of the Plan and the Confirmation Order.  On the Effective Date, all documents and instruments contemplated by the Plan not requiring execution and delivery prior to the Confirmation Date shall be executed and delivered by the Debtor, and Creditors, as the case may be.  All Documents shall be consistent with the terms of the Plan and shall otherwise be subject to approval as to form by all respective counsel.

14.3   <u>Integration Clause</u>.  This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtor, Creditors, Equity Interests and the parties-in-interest upon the matters herein.  Parol evidence shall not be admissible in an action regarding this Plan or any of its provisions.

14.4   <u>Primacy of the Plan and Confirmation Order</u>.  To the extent of any conflict or inconsistency between the provisions of the Plan on the one hand, and the Confirmation Order on the other hand, the provisions of the Confirmation Order shall govern and control.

14.5   <u>Severability</u>.  Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the proponent may modify the Plan in accordance with Article 11 hereof so that such provision shall not be applicable to the Holder of any Claim or Equity Interest.  Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

14.6   <u>No Admission</u>.  Neither the filing of the Plan, nor Disclosure Statement, nor any statement or provision contained herein, nor the taking by the Debtor of any action with respect to the Plan shall (i) be or be deemed to be an admission against interest and (ii) until the Effective Date, be or be deemed to be a waiver of any rights which the Debtor may possess against any other party.  In the event that the Effective Date does not occur, neither the Plan,

Disclosure Statement nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the Debtor's case.

14.7    <u>Bankruptcy Restrictions</u>.  From and after the Effective Date, the Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code or Rules (e.g., section 363, section 364, rule 9019), the Bankruptcy Court, or the United States Trustee's guidelines.  The Disbursing Agents may, on behalf of the Debtor, compromise Claims and/or controversies post-Effective Date without the need of notice or Bankruptcy Court approval.  No monthly operating reports will be filed after the Effective Date; however, the Disbursing Agents shall provide the U.S. Trustee such financial reports as provided above and as the U.S. Trustee may reasonably request until the entry of a final decree.

14.8    <u>Governing Law</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or the law of the jurisdiction of organization of any entity, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan or the Chapter 11 case, including the documents executed pursuant to the Plan.

14.9    <u>Closing of Case</u>.  As soon as the Debtor has performed its obligations under the Plan it shall seek the entry of an Order of the Court closing the case.

14.10    <u>Successors and Assigns</u>.  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

14.11    <u>Notices</u>.  All notices or requests in connection with the Plan shall be in writing and given by mail addressed to:


        PJJ Inc.
        c/o Dennis W. Abrahams
        6111 Windrose Hollow Lane
        Spring, Texas 77379



    with copies to:


        Edward L. Rothberg
        T. Josh Judd
        Hoover Slovacek, LLP
        Galleria Tower II
        5051 Westheimer, Suite 1200
        Houston, Texas  77056

All notices and requests to Persons holding any Claim or Interest in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in the case.  Any such holder of Claim or Interest may designate in writing any other address for purposes of this section, which designation will be effective upon receipt by the Debtor.

     14.12   <u>Validity and Enforceability</u>.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.  Should any provision in this Plan be determined by the Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

Respectfully submitted effective this 8th day of May, 2015.

**DIA-DEN LTD.**

**BY: PJJ INC., its general partner**

By:____/s/ Dennis W. Abrahams_____
Dennis W. Abrahams, President

EDWARD L. ROTHBERG
State Bar No. 17313990
T. JOSH JUDD
State Bar No. 24036866
Galleria Tower II
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: 713.977.8686
Facsimile:  713.977.5395

ATTORNEYS FOR DEBTOR

EXHIBIT A – ASSUMED LEASES AND EXECUTORY CONTRACTS

Counterparty                                                    Cure Amount

1.  Accelerated Production Systems, Inc. / Assumed              N/A

2.  Cushman Wakefield of Texas, Inc. / Expires on 6/31/15      N/A